Lawrence N. ADLER, M.D., Appellee

v.

Stuart G. TAUBERG, M.D., Ramish Chandra, M.D., and Vasantha C. Madhavan, M.D., Appellants.

Superior Court of Pennsylvania.

Argued Feb. 9, 2005.

Filed July 13, 2005.

Reargument Denied Sept. 26, 2005.

Richard B. Tucker, III, Pittsburgh, for appellants.

Paul H. Titus, Pittsburgh, for appellee.

Before: DEL SOLE, P.J., JOYCE and TAMILIA, JJ.

OPINION BY TAMILIA, J.:

¶ 1 Stuart G. Tauberg, Ramish Chandra and Vasantha Madhavan, cardiologists for and directors [1] of Cardiac Medical Associates, Inc. (hereinafter "CMA"), appeal from the March 11, 2004 Order appointing, upon motion of appellee Lawrence N. Adler, M.D., a fifty percent shareholder, director and president of the corporation, a custodian to manage the business affairs of the corporation. Appellee sought appointment of a custodian on the basis of appellants' alleged illegal, oppressive and fraudulent conduct, causing the assets of CMA to be misapplied and wasted. Appellee further alleged the appellants wrongly attempted to issue stock and change the rules of governance of the corporation to appellee's detriment. In granting appellee's motion for appointment of a custodian, the trial court concluded, *inter alia*, appellants "had unjustly exercised authori-

---

1. Only Doctors Chandra and Madhavan are shareholders and directors of the corporation, each owning 25% of the corporation; Dr. Tauberg is not. Record, No. 1, Complaint, at 1–2.

ty and power over [appellee] with respect to the corporate affairs of CMA." Trial Court Opinion, James, J., 7/20/04, at 3–4. This appeal followed.

██ ¶ 2 Appellants argue the record does not support the need for the appointment of a custodian, given that the evidence presented was insufficient to sustain a finding they had acted illegally, oppressively or fraudulently within the meaning of the statute. *See* 15 Pa.C.S.A. § 1767, Appointment of custodian of corporation on deadlock or other cause. The court "erroneously based his decision on the credibility of Dr. Adler [appellee]. Dr. Adler, however, did not testify." Appellant's brief at 14. Moreover, "[t]he issuance of stock to [appellant] Dr. Tauberg was not illegal and the conduct of Appellants was not oppressive towards Dr. Adler." Appellants also contend the 1992 Stock Restriction Agreement was superseded by a 1993 Restated Stock Restriction Agreement. *Id.* at 14, 20.

¶ 3 The facts, as summarized by the trial court, follow.

After a series of conferences and conciliations, an evidentiary hearing was held on [appellee's] request for the appointment of a custodian to run the business pursuant to 15 Pa.C.S.A § 1767.

At the hearing on March 10, 2004, the court heard evidence that the three other directors were attempting to issue stock and change the rules of governance for the corporation to the detriment of CMA and a director and president of CMA. Dr. Chandra and Dr. Madhavan each [owned] 25% of the shares of CMA. Beginning in October of 2002, the [appellants] began to request that [appellee] retire from the practice and his position as president. The [appellants] initially demanded that [appellee's] salary be reduced by one-third, then demanded that his contrac-

tually-guaranteed salary be revoked and his compensation be tied to his production. The other members of CMA attempted to divert patients from the care and treatment of [appellee]. On November 5, 2003, the other shareholder [appellants] attempted to issue CMA shares to [appellant], Dr. Tauberg. When the CMA corporate counsel advised that a previous written agreement restricting the transfer of CMA shares may have precluded the issuance of these shares, the vote was tabled. On November 18, 2003, the [appellants], Dr. Chandra and Dr. Madhavan, voted to increase the number of board members from 3 to 4 and fill the new board seat with Dr. Tauberg. The [appellants] voted to make themselves officers and pay each of them an additional $50,000 for serving as officers. This had the effect of reducing [appellee's] compensation by $37,500. The [appellants] fired the corporations' long-time legal counsel and replaced him with their attorney. The [appellants] then approved a resolution that paid their attorney's fees with corporate funds. The [appellants] effectively removed [appellee's] power to write checks on CMA's bank accounts. The [appellants] began to write corporate checks for items with which [appellee] did not agree. These ongoing disagreements have affected the functioning of the corporation and may endanger patient care.

Trial Court Opinion, at 1–2.

 ¶ 4 The standards by which we consider this appeal follow.

When reviewing the results of a non-jury trial, we are bound by the trial court's findings of fact, unless those findings are not based on competent evidence. Absent an abuse of discretion,

we are bound by the lower court's assessment of credibility of parties.

*Viener v. Jacobs,* 834 A.2d 546, 554 (Pa.Super.2003), *appeal denied,* 579 Pa. 704, 857 A.2d 680 (2004), *cert. denied,* —— U.S. ——, 125 S.Ct. 1300, 161 L.Ed.2d 107 (2005) (citation omitted).

¶ 5 While little Pennsylvania case law exists addressing the matter of the appointment of counsel, an informative analysis has been provided by a case from the Court of Common Pleas of Philadelphia County.

Under 15 Pa.C.S. § 1767, a court may appoint a custodian for a corporation upon application of a shareholder when: "In the case of a closely held corporation, the directors or those in control of the corporation have acted illegally, oppressively or fraudulently toward one or more holders or owners of 5 percent or more of the outstanding shares of any class of the corporation in their capacities as shareholders, directors, officers or employees." 15 Pa.C.S. § 1767(a)(2). [footnote omitted] Oppressive conduct in the context of a close corporation "often takes the form of freezing-out a minority shareholder by removing him from his various offices or by substantially diminishing his power or compensation," although no further description is given. 15 Pa.C.S. § 1767 amended comment–1990.

Much ink has been spilt over what exactly constitutes "oppressive conduct." Courts in the United States have used three approaches to determine whether a minority shareholder is being oppressed:

"Some courts describe oppression as 'burdensome, harsh and wrongful conduct ... a visible departure from the standards of fair dealing and a violation of fair play on which every shareholder who entrusts his money to a company is entitled to rely.' Other courts link the term directly to breach of the fiduciary duty of good faith and fair dealing majority shareholders owe minority shareholders, a duty that many courts recognize as enhanced in a close corporation setting. . . . A third view ties oppression to frustration of the reasonable expectations of the shareholders."

While remarkably few Pennsylvania state cases address or define shareholder oppression, it appears that Pennsylvania has adopted the "reasonable expectations" test to define oppression.

*Del Borrello v. Del Borrello,* 62 Pa.D & C4th 417, 423–424 (2001). "Oppression is defined as 'unjust or cruel exercise of authority or power'." *Leech v. Leech,* 762 A.2d 718, 720 (Pa.Super.2000) (*quoting* Meriam Webster's Collegiate Dictionary (10th ed.1996)).

¶ 6 The record before us reveals the following facts. Beginning in October, 2002, due in part to appellee's recent 70th birthday, the parties began discussions concerning an eventual reorganization of the corporate ownership and structure of CMA. Negotiations, however, were unsuccessful, and on December 3, 2003, appellee filed suit. A review of the transcript of the December 11, 2003 hearing indicates that the parties negotiated for more than one and a half hours in front of the court before they agreed to a "partial standstill agreement" while negotiations concerning dissolution of the corporation continued. A conciliation date of January 15, 2004 was set. N.T., 12/11/03 at 2–3.

¶ 7 While there is no indication the scheduled January 15, 2004 conciliation was conducted, this Court has been provided with an informative transcript from a March 10, 2004 hearing, which began with counsel for appellee summarizing pertinent case and statutory law and providing several exhibits stipulated to by the parties.

Those exhibits, which were thereafter explained by counsel, included (A) the 1992 Practice Reorganization Agreement; (B) the 1993 Shareholders' Agreement; (C) various correspondence written by the parties' counsel between June 6, 2003 and November 26, 2003; (D) CMA Board minutes from November 5, 2003 through March 8, 2004; and (E) a December, 2003, opinion letter by counsel for the appellants. N.T. at 8–10. After the plaintiff's case, defense counsel read excerpts from appellants' affidavits into the record, and offered the subpoenaed testimony of Michael Cassidy, Esquire, former counsel for CMA and present counsel for majority directors, the appellants. The court also heard testimony from appellant Dr. Chandra.

¶ 8 At the conclusion of trial, the court found appellants had wrongly transferred the shares of stock to Dr. Tauberg, in violation of the parties' agreement(s), and therefore ordered the appointment of a custodian. The court stated on the record that the 1993 Shareholders Agreement did not supersede the 1992 Practice and Reorganization Agreement, explaining that paragraph seven of the 1993 document incorporates by reference the stock transfer restriction clause of the 1992 document:

> [T]he parties agree to be bound by the terms and conditions of the [1992] Stock Transfer Restriction Agreement, and also the parties will execute the First Amended and Restated Stock Transfer Restriction Agreement, but neither the Stock Transfer Agreement or the First Amended and Restated Stock Transfer Restriction Agreement shall be deemed to preclude merger.
>
> Therefore, by reference, they've incorporated it into the second agreement.... I believe that there are inconsistencies, and it might even be a

colossal attempt to reconcile the differences.

> However, I do not believe it was superseded. And had they wished to supersede it, they could have superseded it by specific language, and, two, would not have referenced the agreement in the second agreement.
>
> Therefore, we go back to the stock transfer agreement of 1992, which states quite clearly that the association shall not issue additional shares unless the proposed shareholders first sign the agreement and the existing shareholders unanimously consent prior to the issuance of the shares. Therefore, [appellants] are in violation of the issuance of the 10,000 shares to Dr. Tauberg.

*Id.* at 101–102. The appellants then filed an appeal and their Statement of Matters Complained of on Appeal.

¶ 9 After reviewing the record, the court penned its July 20, 2004 Opinion addressing the issues raised in appellants' Statement of Matters Complained of on Appeal, and explained in greater detail its reasons for the issuance of the Order appointing a custodian. In addition to its conclusion that the stock transfer was precluded by the parties' agreements, the court found credible evidence that appellants had "unjustly exercised authority over [appellee] with respect to the corporate affairs of CMA," by removing appellee's ability to sign corporate checks, paying their own legal bills from corporate monies, awarding themselves money which, effectively, diluted that available to president appellee, and otherwise "took control" to appellee's detriment. Trial Court Opinion at 3–4. The court's comment resolving issues of credibility in favor of appellee, while poorly worded, was within the trial court's discretion.[2] We find these observations

2. Although appellee did not testify at March 10, 2004 hearing, in its Opinion, the trial

are supported by the record and we will not disturb the court's conclusions.

¶ 10 Order affirmed.

court stated, "[t]he court found that Dr. Lawrence N. Adler, M.D., was a credible witness and resolved all questions of credibility in favor of the [appellee,]" Trial Court Opinion, James, J., 7/20/2004, at 4. This finding by the trial court, however, despite the fact appellee did not testify at the March 10th hearing, is not reversible error. It is unknown whether appellee appeared and testified before the court at the December 10, 2003 conciliation proceeding, or at any of the other conciliation proceedings, thereby giving the court the opportunity to observe appellee's demeanor and form a basis for a credibility determination. Nevertheless, despite any syntax issue concerning appellee's personal credibility, the court was within its discretion by finding, based upon the ample, legitimate evidence of record, that appellee's position was more credible than that of appellants. The court's reference to appellee's credibility has no critical effect on the court's ultimate conclusion, supported by evidence of record, that appellants acted to appellee's detriment and a custodian for CMA was necessary.